UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN E. WOODARD,

       Plaintiff,                       CIVIL ACTION NO. 04 CV 70017 DT

v.                                  DISTRICT JUDGE DENISE PAGE HOOD

NEIL SZABO, et al.,                MAGISTRATE JUDGE VIRGINIA M. MORGAN

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This matter comes before the court on defendant Margaret Brandenburg's Motion for Summary Judgment and defendant Jay Rising's Motion to Dismiss Pursuant to FRCP Rules 12(b)(1) & 6 and for Summary Judgment Pursuant to Rule 56©).  For the reasons stated below, the court recommends that the motions be granted and that plaintiff's claims against defendants Brandenburg and Rising be dismissed with prejudice.  The court also recommends that the district court decline to exercise supplemental jurisdiction over plaintiff's claims against defendant Neil Szabo.

## II.  Background

Plaintiff's mother obtained a life insurance policy from the Metropolitan Life Insurance Company ("MetLife") through a General Motors benefits program.[1]  She named plaintiff as the beneficiary of the policy.  Upon the death of plaintiff's mother, defendant Lori Sweet, who is an employee of MetLife, was assigned to the matter.  She opened a Total Control Money Market Option Account in plaintiff's name and paid the proceeds of the policy, which amounted to approximately $60,000, into the account.  Though it is not clear from the record, it appears that this distribution occurred sometime in early 2001.

On July 31, 2001, plaintiff executed a Power of Attorney ("POA") designating defendant Margaret Brandenburg, who is an attorney licensed to practice in the State of Michigan, as his agent for the purpose of, *inter alia*, controlling the funds during his incarceration.  Further, the POA also authorized defendant Brandenburg to retain legal counsel for plaintiff for the purpose of pursuing an appeal of his 1991 conviction on charges of Criminal Sexual Conduct (Person Under 13), M.C.L. 750.520B1A.  Pursuant thereto, defendant Brandenburg referred the criminal matter to defendant Szabo, who is also an attorney licensed to practice in Michigan.

By means which are not revealed in the record, the State of Michigan learned that plaintiff had come into possession of the proceeds of his mother's life insurance policy.  On or about October 2, 2002, the Attorney General for the State of Michigan contacted defendant Brandenburg requesting that she disclose all assets in her possession or control owned by

---

[1] Plaintiff is currently an inmate at the Parr Highway Correctional Facility in Adrian, Michigan.  He was incarcerated at the time of the events that gave rise to this cause of action.

plaintiff. The Attorney General requested this information for the apparent purpose of initiating proceedings against plaintiff under State Correctional Facility Reimbursement Act (SCFRA), M.C.L. 800.401 *et seq*., to recoup the costs of his incarceration.[2] Defendant Brandenburg notified plaintiff of the State's request. In a letter dated October 26, 2002, plaintiff asserted that the information sought by the Attorney General was subject to the attorney-client privilege and, therefore, that defendant Brandenburg was obligated to refuse the Attorney General's request. (Exhibit 4, Defendant Brandenburg's Motion for Summary Judgment; attachments to Plaintiff's Complaint) Further, plaintiff terminated his relationship with defendant Brandenburg and instructed her to forward the remaining funds in the MetLife account to a "Pamela King" of Flint, Michigan. Id. Defendant Brandenburg responded in a letter dated November 4, 2002, that it appeared to her that plaintiff was attempting to conceal his assets from the State, that the transfer of the funds to Ms. King or any other third party would constitute fraudulent conduct, and that she would not assist plaintiff in perpetrating a fraud against the State. (Exhibit 5, Defendant Brandenburg's Motion for Summary Judgment) She further indicated that the existence of the MetLife account was not privileged information and that she would provide the Attorney General with the requested information. Id. Defendant Brandenburg also informed plaintiff that in order to protect the funds, she had withdrawn them from the MetLife account and

---

[2]Under SCFRA, the Michigan Department of Corrections is required to obtain from each inmate information regarding his or her assets and to forward that information to the Attorney General. If the inmate is possessed of sufficient assets, the Attorney General may initiate proceedings against the inmate to recoup a portion of the costs of the inmate's incarceration. See M.C.L. 800.401b, 800.403, 800.404.

placed them in an interest bearing account to which she had sole access.[3] Id. She stated that she would distribute the funds to the proper parties upon the resolution of the State's claims against plaintiff, which included not only a potential SCFRA claim, but also, apparently, a claim for child support arrearages. (Exhibits 2, 5, Defendant Brandenburg's Motion for Summary Judgment) Defendant Brandenburg further indicated that she would no longer represent plaintiff in any capacity. Id.

On November 25, 2002, defendant Rising, the State Treasurer for the State of Michigan, filed a complaint in the Wayne County Circuit Court to recover a portion of plaintiff's assets pursuant to SCFRA. (Exhibit 6, Defendant Brandenburg's Motion for Summary Judgment) Both plaintiff and defendant Brandenburg were named as defendants in the matter. Defendant Rising also filed a motion for an ex-parte order appointing a receiver for plaintiff's assets and for an order directing plaintiff to show cause why his assets should not be seized pursuant to SCFRA. (Exhibit 7, Defendant Brandenburg's Motion for Summary Judgment) The following day, Judge Gershwin Drain entered an order appointing defendant Brandenburg as receiver of the funds and setting the matter for a hearing. (Exhibit 8, Defendant Brandenburg's Motion for Summary Judgment)

On February 28, 2003, Judge Drain entered a final order granting defendant Rising the requested relief. The order stated the following:

---

[3]Defendant Brandenburg opened a Total Control Money Market Account in plaintiff's name with Morgan Stanley. (Exhibit 10, Defendant Brandenburg's Motion for Summary Judgment) The account was assigned to defendant Kathy Svrcek-Hetfield, who was dismissed from this action on a prior motion for summary judgment.

This matter having come before the Court on a Complaint and Order to Show Cause why an Order should not be entered appropriating and applying the defendant's assets to reimburse the State for the cost of defendant's confinement in a State correctional facility in accordance with the State Correctional Facility Reimbursement Act (SCFRA), being MCL 800.401, et seq, MSA 28.1701 et seq, and defendant Kevin Woodard having been served more than 30 days prior to this Order (on December 6, 2002) and the Court having been fully advised:

**IT IS ORDERED THAT**:

1. 90% of Defendant Kevin Woodard's assets be paid to the State of Michigan as partial reimbursement for expenses incurred for his incarceration. This amount is not to exceed the actual costs of incarceration ($313, 140.00).

2. Funds currently held by Defendant Margaret Brandenburg, Power of Attorney for Defendant Kevin Woodard[,] shall be disbursed as follows:

> a. Attorney fees in the amount of $5,192.30 shall be paid to Margaret Brandenburg.

Of the remaining balance:

> b. 90% payable to the "State of Michigan" and mailed to: Kathleen A. Gardiner, Prison Reimbursement Section, Cadillac Place, 3030 W. Grand Blvd., Ste. 10-200, Detroit, MI 48202.
>
> c. 10% to defendant Kevin Woodard.

3. Upon the above reimbursement, this case shall be dismissed without prejudice, and without costs to any party.

4. This Final Order resolves the last pending claim in this matter and closes the case.

(Exhibit A, Kathy Svrcek-Hetfield's Motion for Summary Judgment, Docket Entry # 35)

On June 26, 2003, Judge Drain entered an "Order Clarifying/Amending Final Order" in which he identified the accounts from which the funds were to be paid and set forth more clearly the manner in which the funds were to be distributed. The order stated, in part, the following:

> 2. ...Kevin Woodard has two accounts, i.e., a MetLife [] Account, # 404-3368594, with a balance as of November 30, 2002 of 656.54 and a Morgan Stanley Account, #026392, with a balance as of March 31, 2003 of $62,201.26.
>
> 4. This order is required to provide Morgan Stanley with the necessary language to effectuate the original Order entered on February 28, 2003, and to adjust the attorney fees to the Receiver.
>
> **IT IS ORDERED**:
>
> A. The terms and provision of the Final Order entered on February 28, 2003 shall remain in effect except as modified herein;
>
> B. That Morgan Stanley is ordered to pay to the following individuals and/or entities the following amounts from Account No. 026392:
>
>> a. To Margaret Brandenburg the sum of $6,192.30, which represents the attorney fee ordered on February 28, 2003 in the amount of $5,192.30, plus the additional $1,000 incurred as set forth above to be deducted from the sum payable to the State of Michigan;
>>
>> b. To the State of Michigan the sum of $50,898.95, which represents 90% of the combined balances from the MetLife Account and [the] Morgan Stanley Account ($57,665.50), minus attorney fees of $5,192.30 ($51,898.95), minus the deduction of the additional $1,000 attorney fee as set forth in paragraph B(a) above.

(Exhibit 11, Defendant Brandenburg's Motion for Summary Judgment) Morgan Stanley, through defendant Svrcek-Hetfield, distributed the funds as directed in the orders. See footnote 4, infra.

Following the termination of the Wayne County proceeding, plaintiff filed a 48-page, 107-count complaint against defendants Brandenburg, Rising, Sweet, Svrcek-Hetfield, and Szabo in the Circuit Court for the County of Genesee, Michigan, alleging, *inter alia*, claims of negligence, gross negligence, and breach of fiduciary duty with respect to the conduct of the Wayne County Circuit Court proceedings and the handling of the life insurance proceeds. Plaintiff alleged in the complaint, as set forth in paragraphs 34-86 and counts 21-59 thereof, that defendant Brandenburg committed legal malpractice, that she breached the terms of the Power of Attorney agreement, that she breached fiduciary duties owed to plaintiff, and that she converted his assets to her own use. Plaintiff also alleged a raft of claims against defendant Rising based upon his prosecution of the SCFRA action, including negligence, gross negligence, abuse of process, malicious prosecution, and violations of plaintiff's rights under both the United States Constitution and the Michigan Constitution.

Defendant Sweet removed the entire action to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1441 on the ground that the GM benefits program through which the MetLife policy was obtained was an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA) and that plaintiff's complaint stated a claim for relief under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). In a Report and Recommendation dated August 30, 2004, this court recommended that all of

plaintiff's state law claims be remanded to the Genesee County Circuit Court. The district court rejected the court's recommendation and referred the matter for further proceedings. As indicated above, the matter now comes before the court on motions to dismiss and/or for summary judgment by defendants Rising and Brandenburg.

### III. Discussion

#### A. Legal Standards

Defendant Rising moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Rule 12(b)(1) provides for dismissal on the ground of "lack of jurisdiction over the subject matter." Rule 12(b)(6) provides for dismissal where the complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. In deciding such a motion, the court "must assume that all allegations are true and dismiss the claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations[.]" Golden v. City of Columbus, 404 F.3d 950, 959 (6th Cir. 2005)(citations omitted).

Defendants Rising and Brandenburg also seek dismissal pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). Once the moving party has carried his or her burden of demonstrating the absence of a genuine issue of material fact, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1356. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### B. Defendant Rising's Motion

Defendant Rising contends that plaintiff's claims against him should be dismissed pursuant to the Rooker-Feldman doctrine, that he is immune from tort liability under Mich. Comp. Laws (MCL) 691.1407(5), and that plaintiff lacks the authority to bring claims on behalf of the estate of his late mother, to the extent he attempts to do so. As discussed below, the court agrees with defendant Rising on all three counts.

The Rooker-Feldman doctrine holds that inferior federal courts lack subject matter jurisdiction to review the final judgments of state courts. Hutcherson v. Lauderdale County, Tennessee, 326 F.3d 747, 755 (6th Cir. 2003). Two types of claims are barred under this doctrine: "those which allege some injury arising directly from the state court's judgments, and those which allege an injury predating the state-court's judgments but which are still 'inextricably

intertwined' with state-court judgments." Howard v. Whitbeck, 382 F.3d 633, 639 (6th Cir. 2004). In determining whether the federal claim falls within the first category, the court must examine the nature of the relief sought and the particular injury alleged. Id. "'[T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" Hutcherson, 326 F.3d at 755 (quoting GASH Assocs. v. Vill. of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). If the alleged injury resulted from the state court judgment itself, review of the claim in an inferior federal court is barred under the Rooker-Feldman doctrine. If the alleged injury is distinct from, and not inextricably intertwined with, the judgment, Rooker-Feldman does not bar federal review of the claim. Hutcherson, 326 F.3d at 755. A federal claim may be said to be "inextricably intertwined" with a state court judgment where success on the federal claim is dependent upon a determination that the state court incorrectly decided the issues before it. Id. at 756. An exception to the doctrine exists for claims that present a general constitutional challenge to the state law implicated in the underlying proceedings. Howard, 382 F.3d at 639. "However, even where a general constitutional attack is mounted, the state proceedings may foreclose the federal claim under the doctrine of res judicata." Id.

Plaintiff's claims against defendant Rising are nothing more than a thinly-veiled attempt to collaterally attack the judgment of the Wayne County Circuit Court. The injury plaintiff ultimately complains of – the loss of his funds – was brought about by the Wayne County Circuit Court's entry of a judgment authorizing the seizure of those funds pursuant to an action lawfully brought by defendant Rising. Plaintiff does not allege any wrongdoing by defendant Rising

independent of the actions he took in prosecuting the SCFRA action. Rather, having lost in state court, and having failed to seek appellate relief, plaintiff now seeks to recoup his losses by bringing suit against defendant Rising. A grant of relief to plaintiff upon his claims against defendant Rising would necessarily require a finding that the state court judgment was entered in error. Plaintiff's claims are thus "inextricably intertwined" with the judgment. Hutcherson, 326 F.3d at 755. Accordingly, the court lacks jurisdiction over plaintiff's claims against defendant Rising pursuant to the Rooker-Feldman doctrine.

Further, with respect to plaintiff's tort claims, MCL 691.1407(5) provides that "[a] judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." Plaintiff does not contest that defendant Rising is the "highest appointive executive official" of the Department of the Treasury for the State of Michigan, and there is no question that he was acting within the scope of his executive authority when he prosecuted the SCFRA action against plaintiff. Accordingly, defendant Rising is immune from tort liability under MCL 691.1407(5).

As defendant Rising indicates in his motion, plaintiff appears to have alleged various claims on behalf of the estate of his mother. Plaintiff is not a lawyer, and there is nothing in the record indicating that he has any authority to act on behalf of his mother's estate. Accordingly, plaintiff cannot prosecute any claims on behalf of his mother's estate.

In addition to the above, plaintiff has, throughout the course of this action, claimed that the life insurance proceeds in question were subject to ERISA's anti-alienation provision, 29

U.S.C. § 1056(d)(1), and, therefore, that they were not subject to seizure under SCFRA. As discussed below, to the extent plaintiff's claims against defendant Rising are based upon this contention, the claims are plainly lacking merit.

ERISA governs both "employee welfare benefit plans," 29 U.S.C. § 1002(1), and "employee pension plans," 29 U.S.C. § 1002(2). A life insurance policy constitutes an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), not an "employee pension plan" under 29 U.S.C. § 1002(2). See Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 419 n. 4 (6th Cir. 1997); see also Rudolph v. Public Service Co. of Colorado, 847 F.Supp. 152, 154 (D.Colo. 1994); Metropolitan Life Ins. Co. v. Williams, 82 F.Supp.2d 1346, 1349 (M.D.Fla. 1999). The anti-alienation provision, § 1056(d)(1), states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." However, ERISA expressly provides that the anti-alienation provision does not apply to "employee welfare benefit plans." See 29 U.S.C. § 1051; see also Metropolitan Life Ins. Co., 119 F.3d at 419. Thus, the proceeds of a life insurance policy, as part of an "employee welfare benefit plan," are not subject to the anti-alienation provision. Accordingly, the Metlife policy proceeds were not protected from seizure under ERISA's anti-alienation provision.

The bottom line in this matter is that defendant Rising, in his capacity as Treasurer for the State of Michigan, lawfully exercised his authority in initiating the SCFRA action and lawfully seized plaintiff's funds pursuant to a valid court order. Plaintiff is understandably dismayed at the outcome of the SCFRA proceeding, which resulted in the seizure of the bulk of the Metlife policy proceeds. However, it is the SCFRA statutory scheme with which he truly quarrels, not

the actions of defendant Rising.  No fraud or grand conspiracy to deprive him of his money was afoot here.  It was simply a case of a prisoner's funds being seized pursuant to a valid statutory procedure.  For the reasons stated above, the court recommends that defendant Rising's motion be granted in its entirety.

### C.  Defendant Brandenburg's Motion

Plaintiff's claims against defendant Brandenburg largely arise from the execution of the power of attorney agreement and her handling of the life insurance proceeds pursuant to the authority conferred upon her by that agreement.  Plaintiff's remaining claims arise from defendant Brandenburg's alleged negligence in failing to properly supervise defendant Szabo's handling of plaintiff's criminal appeal.

With respect to the claims arising from defendant Brandenburg's handling of plaintiff's funds pursuant to the power of attorney agreement, plaintiff has failed to present one shred of evidence indicating that defendant Brandenburg engaged in any wrongdoing with respect to those funds, that she materially breached the power of attorney agreement, or that she committed any fraud upon plaintiff.  The record before the court conclusively establishes that defendant Brandenburg fully accounted for and preserved all funds over which she had control during the time the power of attorney was in effect and that she was in no way responsible for any loss to plaintiff.  Again, plaintiff's funds were seized pursuant to a facially valid court order procured by defendant Rising.  There is nothing in the record indicating that defendant Brandenburg converted to her own use or otherwise misappropriated any of the funds under her control.  Thus, to the extent plaintiff's claims against defendant Brandenburg are premised upon the loss of his funds,

defendant Brandenburg is entitled to summary judgment as to those claims. To the extent plaintiff otherwise alleges any breach of fiduciary duty or other wrongdoing on defendant Brandenburg's behalf under the power of attorney agreement, plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to the existence of any such wrongdoing. Defendant Brandenburg is likewise entitled to summary judgment as to any such claims.

Plaintiff's remaining claim against defendant Brandenburg is that she failed to properly supervise the handling of plaintiff's criminal appeal by defendant Szabo. Defendant Brandenburg states in her brief that she referred plaintiff's criminal appeal to defendant Szabo, that plaintiff retained defendant Szabo, and that defendant Szabo reviewed plaintiff's criminal file. Further, there is documentation in the record indicating that defendant Szabo was paid a $5,000 retainer for his services and that defendant Szabo and/or defendant Brandenburg retained an investigator to assist defendant Szabo. Beyond that, the record is silent as to what defendant Szabo did or did not do on plaintiff's behalf.

Under the terms of the power of attorney agreement, plaintiff authorized defendant Brandenburg to retain counsel to assist petitioner with his criminal appeal. The agreement did not impose upon defendant Brandenburg a duty to supervise the work of whomever she retained. Thus, plaintiff cannot assert any breach of contract claim arising from defendant Brandenburg's alleged failure to properly supervise defendant Szabo's work. The court will thus examine the claim as one involving legal malpractice. In order to establish such a claim, the plaintiff must demonstrate the following: (1) that an attorney-client relationship existed, (2) that the attorney

committed negligence in the representation of the client, (3) that the client suffered an injury, and (4) that the attorney's negligence was a proximate cause of the alleged injury.  Simko v. Blake, 448 Mich. 648, 655 , 532 N.W.2d 842 (1995).

The parties have not adequately addressed the issue of whether defendant Brandenburg had a duty to monitor defendant Szabo's handling of plaintiff's criminal matter.  There is an argument to be made that defendant Brandenburg did, in fact, have such a duty.  However, because the parties have not addressed it, and resolution of this issue is not necessary to the disposition of defendant Brandenburg's motion, the court will not squarely address it.  Even if defendant Brandenburg had a duty to supervise defendant Szabo's work and even if she breached that duty, plaintiff has failed to present any evidence showing that he suffered an actual injury as a result of the alleged breach.  Accordingly, defendant Brandenburg is entitled to summary judgment with respect to any claims arising from her alleged failure to properly supervise defendant Szabo's work.

### D.  Defendant Szabo

Should the district court accept this court's recommendation that the dispositive motions filed by defendants Rising and Brandenburg be granted, only two defendants will remain – defendant Szabo and defendant Sweet.  The legal malpractice claims brought against defendant Szabo have absolutely no connection to the claims against defendant Sweet.  Litigation of these claims in a single proceeding would be inefficient and could potentially cause undue confusion. Furthermore, at this stage of the proceedings, the claims against defendant Szabo substantially predominate over the claims against defendant Sweet.  The claims against defendant Sweet could

be decided upon a closed administrative record, which has already been submitted to the court, while the claims against defendant Szabo would necessarily involve the presentation of evidence regarding, and an analysis of, among other things, the nature and extent of the attorney-client relationship, petitioner's underlying criminal conviction, and petitioner's likelihood of success in any post-conviction proceedings. Based on these factors, the court recommends, pursuant to 28 U.S.C. § 1367(c)(2), that the district court decline to exercise supplemental jurisdiction over the claims against defendant Szabo. The court notes, as additional support for such a course of action, that these claims have not been litigated in any manner in this proceeding and that neither party would suffer any apparent prejudice if the district court were to decline supplemental jurisdiction.

### IV. Conclusion

For the reasons stated above, the court recommends (1) that defendant Rising's motion to dismiss and/or for summary judgment be **GRANTED** and that the claims against him be **DISMISSED WITH PREJUDICE**, (2) that defendant Brandenburg's motion for summary judgment be **GRANTED** and that the claims against her be **DISMISSED WITH PREJUDICE**, and (3) that the claims against defendant Szabo be remanded to the Circuit Court for the County of Genesee.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                              s/Virginia M. Morgan
                              VIRGINIA M. MORGAN
Dated: October 12, 2005         UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the Kevin Woodard and the attorneys of record by electronic means or U.S. Mail on October 12, 2005.

                        s/J Hernandez
                        Case Manager to
                        Magistrate Judge Morgan